[3 NYS3d 567]

MATTHEW J. O'CONNOR, Petitioner/Plaintiff, v COCCADOTTS, INC., et al., Respondents/Defendants.

Supreme Court, Albany County, January 14, 2015

### APPEARANCES OF COUNSEL

*Wilson Elser Moskowitz Edelman & Dicker LLP*, Albany (*Peter A. Lauricella* and *Benjamin F. Neidl* of counsel), for petitioner/plaintiff.

*The Caponera Law Firm P.C.*, Albany (*Victor A. Caponera, Jr.* and *Ryan M. Caponera* of counsel), for respondents/defendants.

### OPINION OF THE COURT

RICHARD M. PLATKIN, J.

Matthew J. O'Connor is a 49% shareholder in the three business corporations named as respondents/defendants in this hybrid proceeding/action: Coccadotts, Inc., Coccadotts Express, Inc. and Panaji, Inc. (collectively Coccadotts entities). His verified petition and complaint alleges five causes of action: (1) dissolution of the Coccadotts entities pursuant to Business Corporation Law § 1104-a; (2) provisional relief under Business Corporation Law § 1115; (3) breach of fiduciary duty by respondents/defendants Rachel Dott and Lucas Dott (collectively the Dotts); (4) employment discrimination on the basis of sexual orientation, in violation of Executive Law article 15; and (5) unjust enrichment by the Dotts.

Petitioner/plaintiff commenced this proceeding/action on November 25, 2014 by an order to show cause (OTSC) bringing on his application for dissolution of the Coccadotts entities and seeking a preliminary injunction restraining respondents/defendants from taking any actions to change or affect the business, structure, management or value of the Coccadotts entities prior to dissolution. The signed OTSC includes a temporary restraining order prohibiting such actions or changes, except pursuant to a written agreement of the parties or further order of court.

In a verified answer and counterclaim, respondents/defendants generally deny the allegations of the petition/complaint, allege various affirmative defenses and assert a counterclaim for libel per se.[1] The counterclaim alleges that petitioner/plaintiff's allegations of discrimination are false, defamatory and malicious. In an affidavit, respondent/defendant Rachel Dott denies petitioner/plaintiff's allegations of wrongdoing, but elects, on behalf of herself and respondent/defendant Lucas

---

1. The counterclaim is the subject of a separate motion to dismiss, which was made returnable on January 20, 2015.

Dott, to purchase the shares owned by petitioner/plaintiff pursuant to Business Corporation Law § 1118.

In reply, petitioner/plaintiff argues that the court has the authority to order the requested Business Corporation Law § 1115 injunction, notwithstanding the Business Corporation Law § 1118 election. In the alternative, petitioner/plaintiff seeks an order requiring respondents/defendants to post a bond or other suitable security in an amount sufficient to secure petitioner/plaintiff for the fair value of his shares (*see* Business Corporation Law § 1118 [c] [2]).

Business Corporation Law § 1118 allows a corporation or its majority shareholders to respond to a claim for dissolution under Business Corporation Law § 1104-a by making a binding election to purchase the complaining shareholder's shares at their fair value. Such an election may be made as of right within 90 days after the filing of the dissolution petition (Business Corporation Law § 1118 [a]). The fair value of the corporation shall be determined as of the day prior to the date on which the petition was filed (*id.* § 1118 [b]). "The buyout election accommodates the interests of the respective parties in ensuring the continued functioning of the business, while also protecting the financial interest of the shareholders and creditors" (*Ferolito v Vultaggio*, 99 AD3d 19, 25-26 [1st Dept 2012] [internal quotation marks omitted]).

Here, petitioner/plaintiff is a 49% owner of the Coccadotts entities, and the Dotts own a majority interest in the entities.[2] Accordingly, the Dotts may elect to purchase petitioner/plaintiff's shares under Business Corporation Law § 1118, and the issue principally becomes one of establishing the fair value of the Coccadotts entities (*see Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d 439, 445 [1991]).[3]

With respect to the branch of the OTSC seeking to restrain respondents/defendants from taking any actions to change or affect the business, structure, management or value of the Coccadotts entities prior to dissolution, petitioner/plaintiff cor-

---

**2.** Specifically, Rachel Dott owns a 51% interest in Coccadotts, Inc. and a 26% interest in the other two companies. The remaining 25% of the Coccadotts Express, Inc. and Panaji, Inc. shares are owned by Lucas Dott.

**3.** At a court conference held on the January 5, 2015 return of the OTSC, it was agreed that each side would retain an expert to value the Coccadotts entities. This will facilitate efforts by the parties to reach agreement on the fair value of petitioner/plaintiff's shares and provide a basis for judicial determination of the same should those good faith efforts prove unsuccessful.

rectly observes that a Business Corporation Law § 1115 injunction may issue "[a]t any stage of an action or special proceeding under [Business Corporation Law article 11]" (Business Corporation Law § 1115 [a]), even following a Business Corporation Law § 1118 election (see Altop v TNT Petroleum, Inc., 2012 NY Slip Op 32262[U] [Sup Ct, Nassau County 2012]). Nonetheless, the court does not believe it would be a provident exercise of its discretionary authority to grant the requested preliminary injunction.

The Dotts have made a binding election to purchase petitioner/plaintiff's shares for their fair value as of November 24, 2014. As a result, the financial risk of future decisions concerning cupcake production, retail outlets and the like falls squarely on the Dotts and not on petitioner/plaintiff. To be sure, there remains a theoretical possibility that the Dotts could seek leave to withdraw their presumptively irrevocable election based upon "just and equitable considerations" (Business Corporation Law § 1118 [a]), but they would bear a heavy burden (see e.g. Matter of Smith v Russo, 230 AD2d 863 [2d Dept 1996]; Matter of Chu v Sino Chemists, 192 AD2d 315 [1st Dept 1993]), and the nature and extent of any intervening changes to the business and/or its value certainly could be considered. Accordingly, while there is no dispute that petitioner/plaintiff's hard work over the years contributed to the success of the enterprise, the Dotts should not be restrained from confronting the business challenges faced by the Coccadotts entities going forward.[4]

Finally, the court denies without prejudice petitioner/plaintiff's request for an order requiring respondents/defendants to post a bond or other suitable security in an amount sufficient to secure petitioner/plaintiff for the fair value of his shares (see Business Corporation Law § 1118 [c] [2]). This request was made for the first time in reply, and it is unsupported by proof persuasively demonstrating a need for such relief (cf. Matter of Elliot Kastle, Inc. [Kastleman—Shalom], 234 AD2d 181 [1st Dept 1996]).

Accordingly, it is ordered that interim relief sought by petitioner/plaintiff is denied in accordance with the foregoing,

---

4. The availability of surcharges and adjustments to the fair value of the shares under Business Corporation Law § 1118 (b) represents an additional check against the willful or reckless dissipation of the assets of the Coccadotts entities.

and the temporary restraining order set forth in the OTSC is hereby annulled.